IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| AMBER INGS-RAY | CIVIL ACTION |
| v. | No. 02-CV-3615 |
| SCHOOL DISTRICT OF PHILADELPHIA, et al. | |

O'Neill, J.                                                                                     April    , 2003

**MEMORANDUM**

I. INTRODUCTION

Plaintiff, Amber Ings-Ray, a former student at Widener Memorial School for Handicapped Children, has sued the School District of Philadelphia and the School Reform Commission, under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* for failing to prevent student-on-student sexual harassment. See Davis v. Monroe County Bd. of Educ., 526 U.S. 629 (1999). Presently before me is defendants' motion for summary judgment. For the reasons stated below, I will grant defendants' motion.

II. BACKGROUND

Plaintiff is a physically and mentally disabled individual who was born on June 2, 1983 with cerebral palsy and also currently suffers from ataxia, scoliosis, kyphosis, and mental retardation. Plaintiff attended Widener from September, 1998 until her graduation in June, 2002.

The present action arises from two alleged incidents of sexual harassment by a physically

and mentally disabled male classmate, H.M., who is three years younger than plaintiff. In February, 2001, H.M. touched plaintiff's behind while both students were traveling on a school bus. Plaintiff told her mother about the incident. Plaintiff's mother subsequently reported the incident to Assistant Principal Sharon Thaxton on February 14, 2001.

In response to the report, Thaxton launched an investigation on February 16, 2001 during which H.M. admitted to touching plaintiff's behind. Thaxton spoke to H.M.'s parent and explained the seriousness of the incident. Thaxton and H.M.'s parent agreed that H.M. would be suspended from school for a three-day cooling off period. After H.M. returned to school, he received counseling. Thaxton immediately transferred H.M. out of the one substantive class that he shared with plaintiff, although the two continued to share the same homeroom. Thaxton arranged H.M. to be supervised by a teacher's aide while in the classroom and the hall. Thaxton requested that the high school's physical education instructor teach what constituted inappropriate touching in the sex education curriculum. Additionally, Thaxton arranged, through the school's counselor, for the group Women Organized Against Rape and a police officer from Philadelphia's Special Victim's Unit to present a program on inappropriate touching to the student body. No further incidents occurred between plaintiff and H.M. during the 2001-2002 academic year.

The following academic year plaintiff and H.M. began sharing classrooms again without incident until February of 2002.[1] On February 13, 2002, approximately one year after the first

---

[1] Plaintiff alleges in her complaint that sometime between January and March 2002, H.M. put plaintiff's hand on his genitals and prevented her from removing it. Additionally, plaintiff alleges that on two other occasions on or about February 3, 2002, H.M. kissed plaintiff on the mouth without her consent. Plaintiff's mother did not reported these allegations to Widener school officials until after she was informed of the second incident on February 13, 2002.

incident occurred, a teacher reported to Thaxton that H.M. again touched plaintiff's behind while the two were walking in the hall and accompanied by two adult supervisors. For confidentiality purposes the adult aide assigned for supervising H.M. had not been told about the prior incident between plaintiff and H.M.

 Thaxton responded by advising H.M.'s parent that H.M. should not attend Widener's Valentine's Day dance the next day on February 14, 2002. Plaintiff's mother was informed that H.M. would not attend the dance. On February 21, 2002, plaintiff's mother met with the Principal Robert T. Mack, alleging that the second touching constituted a sexual assault. In response, Principal Mack ordered an investigation. On February 22, 2002, Mack assigned additional para-professional support for plaintiff's and H.M.'s classrooms pending the outcome of the investigation. Additionally, Thaxton discussed the allegations with the H.M's parent and had H.M. removed the from the school's basketball team. Thaxton sought statements from individuals who had witnessed the second incident and determined that H.M. had placed two fingers down the waistband of plaintiff's pants. Principal Mack scheduled an Individualized Education Program team meeting for H.M. to develop a behavior plan and to determine whether H.M.'s behavior was a result of his disabilities. On February 25, 2002, Widener staff participated in training activities and a brainstorming session to consider consequences for improper touching, which resulted in an intervention plan for H.M. dated March 6, 2002. On February 26, 2002, Widener's counselor, H.M's teacher, and Thaxton met to discuss options for H.M. Thaxton met with all staff dealing with H.M. and plaintiff on February 28, 2002 and developed a schedule with all of their teachers, outlining supervision of both students in all activities including lunch and the hallways.

On March 4, 2002 H.M. was transferred out of all classes that he shared with plaintiff and transferred out of the homeroom they shared. Principal Mack telephoned plaintiff's mother to advise her that H.M. had been reassigned from plaintiff's classrooms, that a full-time aide had been assigned to H.M., and that the investigation was on-going. Also, Principal Mack called the Special Victim's Unit and learned that because of H.M.'s mental and physical disabilities and because Widener had a plan for H.M. there would be no criminal charges filed by the Assistant District Attorney as a result of a complaint that plaintiff's mother filed against H.M.

From March 13, 2002 until May 17, 2002 plaintiff refused to attend school, except to participate in rehearsals leading up to her graduation, fearing that H.M. may sexually harass her again. Thereafter, plaintiff graduated from Widener.

### III. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has recognized that the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions. . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  After the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party, to prevail, must make a showing sufficient to establish the existence of every

element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party may not simply rest upon the allegations or denials of the party's pleading. See id. at 324.

I must determine whether any genuine issue of material fact exists. An issue is "material" only if the dispute over facts "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the record taken as a whole in a light most favorable to the nonmoving party, "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986) (citation omitted). If the evidence for the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50 (citations omitted).

## IV. DISCUSSION

I will grant defendants' motion for summary judgment because defendants were not deliberately indifferent to plaintiff's allegations of harassment.

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . . " 20 U.S.C. § 1681(a).

In Davis v. Monroe County Board of Education, 526 U.S. 629 (1999), the Supreme Court recognized that a school district can be liable for damages under Title IX if it is deliberately indifferent to known acts of student-on-student sexual harassment: "We thus conclude that funding recipients are properly held liable in damages only where they are deliberately indifferent

to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Id. at 650.² The plaintiff in Davis was a fifth-grade female who endured months of repeated sexually-charged verbal assaults and touching from a male classmate. Id. at 634. Despite numerous complaints from the plaintiff and other female students, the school never attempted to prevent the on-going harassment:

> On the contrary, notwithstanding [plaintiff's] frequent complaints, only after more than three months of reported harassment was she even permitted to change her classroom seat so that she was no longer seated next to G.F. . . . Moreover, [plaintiff's] alleges that, at the time of the events in question, the Monroe County Board of Education (Board) had not instructed its personnel on how to respond to peer sexual harassment and had not established a policy on the issue. .

Id. at 635.

The Davis Court determined that in order to trigger a duty to respond the school district must be aware of acts of sexual harassment occurring in an area where the school exerts substantial control over the alleged harassment. See id. at 644 ("A [school district] cannot be directly liable for its indifference where it lacks the authority to take remedial action."). Moreover, the school district's inaction "must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." Id. at 645. The Davis Court recognized that school administrators need not take any particular action to remedy the harassment, such as immediate expulsion of the alleged harasser, to avoid being found deliberately indifferent. Id. at

---

² In addition to asserting a lack of deliberate indifference on their part, defendants also contend that the two known acts of sexual harassment were neither severe nor pervasive as a matter of law. I am inclined to agree. However, because defendants clearly did not act with deliberate indifference in responding to plaintiff's allegations, which is determinative of the present motion, I will not consider their alternative argument.

648. Rather, the Supreme Court noted that school districts would be "deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Id. Moreover, the Supreme Court also specifically recognized: "In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." Id. at 649.

    In the present case, defendants' response to plaintiff's allegations of sexual harassment was not clearly unreasonable in light of the known circumstances and, therefore, defendants did not act with deliberate indifference. After plaintiff's mother reported the first incident that occurred on the school bus in February of 2001, defendants launched what can be characterized as a model response. Assistant Principal Thaxton immediately began an investigation of the incident and, after explaining the seriousness of the allegations from H.M.'s parent, obtained a confession. Thereafter, Thaxton suspended H.M. from school for a three-day cooling off period and after returning to school he received counseling. Thaxton also immediately transferred H.M. out of the one substantive class that he shared with plaintiff and arranged for a teacher's aide to supervise him while in the classroom and the hall. Moreover, school officials modified the sexual education curriculum to address sexual harassment and arranged for a special presentation to the student body of a program on inappropriate touching.

    Plaintiff contends that defendants' response to the first incident was not reasonable because a second incident occurred a year later in February of 2002. Although defendants' remedy was not foolproof and plaintiff and H.M. were allowed to share classes and a homeroom again in 2002, there is little more short of outright expulsion that school officials could have

done to prevent further harassment by H.M. The second incident was witnessed by aides assigned to supervise the two students while traversing the hallway and was immediately reported to school officials. Again, school officials launched an investigation and thereafter removed H.M. from all classes that he shared with plaintiff. Additionally, school officials met and developed an intervention plan tailored to prevent further harassment by H.M. Moreover, Widener staff participated in further training activities to prevent future sexual harassment. Such comprehensive and well-orchestrated remedies to two allegations of sexual harassment cannot, as a matter of law, constitute clearly unreasonable responses.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| AMBER INGS-RAY | CIVIL ACTION |
| v. | No. 02-CV-3615 |
| SCHOOL DISTRICT OF PHILADELPHIA, et al. | |

## ORDER

AND NOW, this     day of April 2003, after considering defendants' motion for summary judgement and plaintiff's response thereto, the motion is GRANTED and judgment is ENTERED in favor of defendants and against plaintiff.

_____
THOMAS N. O'NEILL, JR., J.